UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUIS HUMBERTO JOLON PUAC,<br><br>Petitioner(s),<br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent(s). | CASE NO. C26-3739-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner has been detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") since August 2026, and an immigration judge ("IJ") denied bond because he found that Petitioner was a flight risk. Because the factors considered by the IJ do not rationally bear on Petitioner's likelihood to appear for immigration proceedings, the Court finds that the IJ abused his discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government to release Petitioner from custody.

## I. BACKGROUND

Petitioner Luis Humberto Jolon Puac, a native and citizen of Guatemala, first entered the United States, was encountered at the border by United States Border Patrol, and voluntarily returned to Mexico in August 2006. Dkt. No. 8 ¶ 3–4. Petitioner reentered the United States without inspection or admission in August 2018. Dkt. No. 3 ¶ 5; *see* Dkt. No. 8 ¶ 5. Petitioner initially lived in Georgia and California. Dkt. No. 3 ¶ 6. Since March 2019, Petitioner has lived

in the Seattle area with his wife and three daughters, one of whom has a seizure disorder that requires ongoing medical treatment. *See id.* ¶ 8; Dkt. No. 2 at 11, 23–40. Petitioner and his family have lived in the same apartment in Kent, Washington, since July 2019. *See* Dkt. No. 2 at 51–52, 59–70; Dkt. No. 3 ¶¶ 6, 8. During that time, Petitioner and his family have been active members of a church in Kent. *See* Dkt. No. 2 at 49.

Since his reentry in 2018, Petitioner has worked in construction, and he has owned his own general contracting business since 2021. Dkt. No. 3 ¶ 7; *see* Dkt. No. 2 at 42–45. Most recently, Petitioner's business employed eight people, not including Petitioner. Dkt. No. 3 ¶ 7; *see* Dkt. No. 2 at 42–45. Petitioner has paid taxes since at least 2020. Dkt. No. 2 at 59–70. He has no criminal history. Dkt. No. 3 ¶ 9. With his petition, Petitioner submitted letters of support from friends, coworkers, employers, customers, and community members; they describe Petitioner as a hardworking, honest, and kind member of the community, and a dedicated and relied-upon family member. *See* Dkt. No. 2 at 47–58.

On August 25, 2026, Immigration and Customs Enforcement ("ICE") agents arrested and detained Petitioner in a "targeted enforcement operation" in Shoreline, Washington. Dkt. No. 8 ¶ 7. According to the declaration of United States Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard, a Form I-200 "Warrant for Arrest of Alien" for Petitioner had previously been issued on August 3, 2026 (Dkt. No. 8 ¶ 6), and the Government has filed in the record a Form I-200 for Petitioner that is dated "08/03/2026." Dkt. No. 7-1 at 2. However, the Government has also filed in the record the Form I-213 "Record of Deportable/Inadmissible Alien" for Petitioner that suggests the Form I-200 was issued on the same day that Petitioner was arrested, August 25, 2026. Dkt. No. 7-2 at 3. The Form I-213 states:

> *On August 25, 2026*, [ICE] identified a citizen and national of Mexico.[1] DHS system queries indicated that JOLON-Puac … has no pending or approved immigration applications that would allow him to remain in the U.S. *Based on this information*, an [ICE] supervisor issued a Warrant of Arrest of Alien (Form I-200) for the intended subject.

*Id.* (emphasis added). According to Petitioner's sworn declaration filed with his petition, when they arrested Petitioner, ICE "did not show [him] an arrest warrant" and told him "that they saw [him] in the Home Depot Parking lot and they ran [his] plates and identified [him]." Dkt. No. 3 ¶¶ 10–11.

When Petitioner was arrested by ICE on August 25, 2026, he was leaving Home Depot in his work vehicle. *Id.* ¶ 10; *see* Dkt. No. 7-2 at 3. When he saw sirens and lights, Petitioner pulled over. Dkt. No. 3 ¶ 10; *see* Dkt. No. 7-2 at 3. ICE agents surrounded Petitioner's vehicle and shouted at Petitioner to roll down his window. Dkt. No. 3 ¶ 10; Dkt. No. 7-2 at 3. In his sworn declaration, Petitioner describes:

> They were screaming loudly at me to roll the window down. I got really scared and did not immediately roll down the window or open the door. The officers opened my door. I put my hands in sight and told them I was not going to resist. I asked them if I could make a call, but they grabbed me and pulled me out of the car and told me I was under arrest.

Dkt. No. 3 ¶ 10. The Form I-213 narrative states:

> The officers who approached the driver's side of the vehicle identified themselves as [ICE] and requested [Petitioner] to roll down the window three times which he refused to do so claiming he was on a phone call. At this time officers gave verbal commands for [Petitioner] to exit the vehicle which he did not comply with. Officers proceeded to open the driver side door of the van …. [and] escorted [Petitioner] out of the vehicle without incident.

---

[1] This narrative portion of the Form I-213 also appears to misidentify Petitioner's nationality. *See* Dkt. No. 7-2 at 3 (describing Petitioner as a "national of Mexico").

Dkt. No. 7-2 at 3–4. The Form I-213 states that one of the ICE officers "was wearing a body worn camera" during Petitioner's arrest. *Id.* at 3. No footage of Petitioner's arrest, from a body worn camera or otherwise, appears in the record.

On the same day he was detained by ICE, Petitioner was served with a Notice to Appear ("NTA") and booked into the NWIPC in Tacoma, Washington. Dkt. No. 8 ¶ 7; Dkt. No. 7-4 at 2; *see* Dkt. No. 3 ¶ 12. Petitioner was served with a "superseding NTA" on September 15, 2026. Dkt. No. 8 ¶ 9; Dkt. No. 7-4 at 5.

Petitioner appeared before an IJ for a bond hearing on September 18, 2026. Dkt. No. 8 ¶ 10. At the hearing, Petitioner presented evidence to the IJ regarding his personal, familial, and economic ties to the United States and the Seattle area. Among other things, Petitioner presented evidence that he has lived with his family in the same Kent, Washington home for over seven years, and he will return to that home upon release on bond; a close family friend, a United States citizen, has agreed to act as his bond sponsor; he owns a business that employs other people, and he also owns work equipment and vehicles; his wife and three children depend on him for material and emotional support; his daughter has serious medical issues and requires ongoing treatment in Washington, and Petitioner also requires medical treatment for diabetes. Dkt. No. 2 at 18–82; Dkt. No. 7-7; Dkt. No. 3 ¶ 16. Petitioner also proffered his testimony under oath about the events of his arrest and his cooperation with ICE that contradicted aspects of the narrative presented in the Form I-213. Dkt. No. 7-7 at 04:17 to 05:54. Petitioner requested a "very high bond" of "over $28,000." Dkt. No. 7-7 at 06:00 to 06:10.

At the bond hearing, the Government presented as evidence a copy of the Form I-213 "Record of Deportable/Inadmissible Alien" for Petitioner. Dkt. No. 2 at 84–89; Dkt. No. 7-7 at 01:04 to 01:34. The Government argued that Petitioner's 2018 reentry and prior entries into the country, his "speculative" relief from removal, lack of work authorization, and admission to having

at one time used false documents made Petitioner a flight risk. Dkt. No. 7-7 at 07:50 to 09:10. With respect to Petitioner's health issues and those of his daughter, the Government noted that Petitioner lacks health insurance and his daughter has used financial assistance. *Id.* at 10:02 to 11:30. The Government did not argue that Petitioner's arrest conduct made him a flight risk, nor did it proffer the testimony of any person who witnessed Petitioner's arrest nor any video or audio footage of the arrest. Dkt. No. 7-7; *see* Dkt. No. 2 at 84–89.

The IJ found that Petitioner was not a danger to the community. Dkt. No. 7-7 at 11:37 to 11:47; Dkt. No. 2 at 91. However, the IJ found Petitioner was a flight risk. Dkt. No. 7-7 at 11:47 to 13:25. The IJ based his flight-risk finding on Petitioner's unlawful entries into the United States in 2018 and before, the speculative nature of Petitioner's relief, and Petitioner's conduct when he was arrested by ICE. *Id.* But the IJ qualified the evidence on which he based his finding: he noted that Petitioner's unlawful entries occurred "a number of years ago" (*id.* at 12:00 to 12:10), and with respect to the Form I-213's account of Petitioner's arrest, the IJ stated that he did not "place a whole lot of weight on this." *Id.* at 12:44–13:16. On the basis of his flight-risk finding, the IJ denied Petitioner's release on bond. *Id.* at 13:10–13:30; Dkt. No. 2 at 91–92.

On September 28, 2026, Petitioner appealed the IJ's denial of bond to the Board of Immigration Appeals ("BIA"). Dkt. No. 8 ¶ 11. His appeal remains pending. *Id.* On September 29 and October 14, 2026, Petitioner appeared before an IJ for hearings in his removal proceedings, each of which was continued on Petitioner's request to allow him to find legal representation. *Id.* ¶¶ 11–12. Petitioner is next scheduled for a hearing before an IJ on November 3, 2026. *Id.* ¶ 13.

Petitioner filed the present petition for habeas corpus on October 2, 2026. Dkt. No. 4. Petitioner remains in detention at the NWIPC. Dkt. No. 3 ¶ 3; *see* Dkt. No. 8 ¶¶ 10–13.

## II. ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Petitioner received a bond hearing before an IJ on September 18, 2026. The question presented in the habeas petition is whether the bond hearing and resulting bond decision pass constitutional muster. According to Petitioner, they do not: because "the IJ found Petitioner to be a flight risk without explanation or analysis and on factors that, as a matter of law, do not justify that conclusion," Petitioner contends, "the IJ violated his rights to full and fair proceedings and his rights to due process under the Fifth Amendment of the Constitution[.]" Dkt. No. 1 at 2–3; *id.* ¶ 6. The Government disagrees because, it argues, the IJ's consideration of "Petitioner's potential relief, prior entries, and circumstances of arrest" formed "a reasonable basis to deny Petitioner's release for risk of flight." Dkt. No. 6 at 12.[2]

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing

[2] The Government's return also argues that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits. Dkt. No. 6 at 5–11. The Court waives prudential exhaustion in light of the irreparable injury that results from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

for abuse of discretion, the district court does not reweigh the evidence, but determines whether the IJ applied the correct legal standard. *See id.* at 785.

In making bond determinations, IJs consider the so-called "*Guerra* factors":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). While an IJ is not required to "discuss each piece of evidence submitted" in assessing flight risk, an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. *Martinez*, 124 F.4th at 785. An IJ commits an abuse of discretion where the IJ's flight-risk determination is "arbitrary, irrational, or contrary to law." *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016).

The Court finds that the IJ abused his discretion when he denied Petitioner's bond request. Here, the IJ found Petitioner to be a flight risk based on Petitioner's entries into the United States in 2018 and before, the speculative nature of Petitioner's relief, and the Form I-213's account of Petitioner's conduct when he was arrested by ICE. Without more, these considerations are legally insufficient to establish flight risk.

That Petitioner entered or reentered the United States without permission over eight years ago or longer is insufficient to establish a current flight risk that is unmanageable by release on bond. *See Poot v. Mullin*, No. 26-CV-3321-CTS, 2026 WL 2659590, at *8 (C.D. Cal. Sept. 9, 2026) ("A decades-old history of simply entering the United States without permission, or trying

to, has been held to be 'legally insufficient to establish a current flight risk that is unmanageable by release on bond.'" (quoting *Gonzalez Reyes v. Rios*, No. EDCV 26-3830, 2026 WL 2190830, at *5 (C.D. Cal. July 28, 2026))); *Herrera Ramirez v. Blanche*, No. 26-CV-03938-DTB, 2026 WL 2395217, at *10 (C.D. Cal. Aug. 17, 2026) (finding IJ's flight-risk determination based in part on a petitioner's "surreptitious entry into the United States" was abuse of discretion where the IJ "failed to explain how [p]etitioner's entry into the United States, 'surreptitious' or otherwise, over ten years ago evidences that he is a flight risk."). Despite acknowledging that the reentries occurred "a number of years ago" (Dkt. No. 7-7 at 12:00 to 12:10), the IJ provided no explanation why they "would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee," and "[c]oncluding that an unlawful entry from [over 8 years ago] … automatically weighs in favor of finding flight risk lacks any objective rationale." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026); *Herrera Ramirez v. Blanche*, 2026 WL 2395217, at *10.

Similarly, the IJ provided no rational connection between Petitioner's "speculative" relief and flight risk. "[T]he fact of a removal order—or the lack of potential forms of relief for a potential future removal order—is not sufficient by itself to deny bond or establish flight risk." *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1674357, at *8 (W.D. Wash. May 26, 2026) (cleaned up); *Soriano*, 830 F. Supp. 3d at 1081. This is particularly so where, as here, the IJ "provide[s] no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak" or speculative. *Soriano*, 830 F. Supp. 3d at 1081; *Poot*, 2026 WL 2659590, at *9.

That leaves the Form I-213's account of Petitioner's conduct when he was arrested by ICE, on which the IJ expressly did not "place a whole lot of weight." *Id.* at 12:44–13:16. "[T]he Ninth

Circuit has long held that information on an authenticated immigration form, including an I-213, is presumed to be reliable in the absence of evidence to the contrary presented by the alien." *Herman v. DHS*, No. 26-CV-01995-MBK, 2026 WL 1723960, at *9 (C.D. Cal. June 12, 2026) (cleaned up) (quoting *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022)). "However, an I-213 'could not be presumed true when the source of that information was neither a government official nor the subject of the report, or where there was evidence of unreliability.'" *Id.* (quoting *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005)). Here, Petitioner challenged the reliability of the Form I-213; Petitioner proffered evidence, in the form of his sworn testimony, of the unreliability of the Form I-213's account of his arrest by ICE. *See id.* In response, the Government presented no evidence, besides the contested I-213, to contradict Petitioner's proffered evidence or to corroborate the I-213's account. In fact, the Government did not argue that Petitioner's conduct during his arrest made him a flight risk. And the IJ did not identify or explain how Petitioner's conduct could have been perceived as uncooperative or resisting arrest. Under these circumstances, no reasonable, impartial decisionmaker would rely on the I-213's account of Petitioner's arrest conduct to find that Petitioner is a flight risk. *See Loya Medina v. Hernandez*, No. 2:26-CV-00772-GJL, 2026 WL 1260848, at *8 (W.D. Wash. May 7, 2026) (finding abuse of discretion where IJ based flight-risk finding on Form I-213 that only reflected a petitioner "did not immediately exit her vehicle during a sudden arrest encounter after officers issued several warnings and requests," nothing in the record showed the petitioner "attempted to flee, threatened officers, engaged in violence, or otherwise took affirmative steps to evade arrest," and "the IJ did not adequately explain how this isolated conduct automatically demonstrated that Petitioner posed a flight risk warranting continued detention"); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1102 (W.D. Wash. 2026) (similar); *see also Herman*, 2026 WL 1723960, at *9 ("Such uncorroborated and disputed hearsay evidence in the I-213 cannot establish 'clear and

convincing' evidence that Petitioner is a flight risk."); *cf. Singh v. Sessions*, 702 F. App'x 508, 510 (9th Cir. 2017) ("[T]he BIA abused its discretion by relying on facts contained within the Record of Deportable/Inadmissible Alien ("I-213") without addressing its contested veracity.").

Because the Court finds that the IJ did not apply the correct legal standard and the record unequivocally contradicts the IJ's flight-risk finding, the Court concludes that the IJ abused his discretion in denying bond. Petitioner's continued detention would serve no immigration purpose, and the Court will order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 26-cv-00906-JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court further ORDERS:

(1) The Government shall release Petitioner no later than October 28, 2026, on reasonable conditions of supervision.

(2) The Government shall file a status report no later than October 30, 2026, confirming compliance with this order.

(3) Petitioner is granted leave to seek attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and any other basis justified under law. Any fee petition shall be filed within the deadlines set forth by the EAJA.

Dated this 27th day of October, 2026.

Kymberly K. Evanson
United States District Judge